## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CYNTHIA GATLING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 20-3770 (FYP)** |
| ) | |
| **JUBILEE HOUSING, INC.,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Cynthia Gatling is a wheelchair user who lives in an apartment building owned and operated by Defendants Jubilee Housing, Inc. and Jubilee Housing Limited Partnership. *See* ECF No. 16 (Amended Complaint), ¶ 7. Plaintiff alleges that the wheelchair ramp she must use to access the building is unsafe, and that the building's wheelchair lift has been inoperable for years. *See generally id.* Based on Defendants' alleged refusal to fix these problems after multiple requests, Plaintiff brings this suit, claiming (1) violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"); (2) violations under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"); (3) breach of her lease agreement; and (4) breach of the covenant of good faith and fair dealing implied by her lease agreement. *See* Am. Compl., ¶ 1.

Before the Court is Defendants' Motion to Dismiss. *See* ECF No. 17 (Defendants' Motion to Dismiss Amended Complaint). Defendants argue that (1) the statute of limitations has run on Plaintiff's statutory claims under the Rehabilitation Act and the DCHRA; (2) the relevant DCHRA provisions do not apply to Plaintiff's apartment building; (3) Plaintiff's lease includes

no contractual obligation for Defendants to provide reasonable accommodations for Plaintiff's disability; and (4) Defendants have not breached any implied or express duty of good faith and fair dealing. *Id.* at 2. Plaintiff has filed an Opposition, *see* ECF. No. 18, and Defendants filed a Reply, *see* ECF No. 20. Also before this Court is Plaintiff's Motion to Expedite. *See* ECF No. 21 (Plaintiff's Motion for Expedited Resolution of Defendants' Motion to Dismiss). Plaintiff requests an expedited ruling on the Motion to Dismiss because, she asserts, she has been virtually homebound as a result of the alleged deficiencies in the wheelchair ramp and wheelchair lift. *Id.* at 1–2. For the following reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. The Court also will deny Plaintiff's Motion to Expedite as moot.[1]

## BACKGROUND

Plaintiff resides at the "Mozart," a low-income apartment building located at 1630 Fuller Street, N.W., Washington, D.C. *See* Am. Compl., ¶ 1. Defendant Jubilee Housing, Inc. is a non-profit in Washington, D.C. that provides affordable housing through various financing programs and structures. *Id.*, ¶ 8. On or about September 29, 2005, Jubilee Housing, Inc. sold the Mozart to Defendant Jubilee Housing Limited Partnership ("JHLP"). *Id.*, ¶ 11. The two Defendants jointly own and operate the Mozart. *Id.*

Plaintiff alleges that, over the last several years, she has fallen out of her wheelchair while entering and exiting the Mozart because the wheelchair ramp at the front of the building is too steep and is not in compliance with architectural standards. *Id.*, ¶ 17. Moreover, Plaintiff allegedly cannot access the building's mailroom because there is a step leading to that room

---

[1] On October 29, 2021, Plaintiff filed a Motion to Expedite this Court's consideration of the Motion to Dismiss. *See* Pl. Mot. The Court was already considering the Motion to Dismiss when the Motion to Expedite was filed, and the Motion to Dismiss is resolved by the instant Memorandum Opinion and accompanying Order.

which prevents wheelchair access. *Id.*, ¶ 19. Plaintiff also alleges that the wheelchair lift on the side of the building has been inoperable for years. *Id.*, ¶ 20. Plaintiff, her children, and her caregivers have repeatedly requested that the wheelchair lift and wheelchair ramp be repaired or replaced. *Id.*, ¶¶ 21–22.

Plaintiff has a medical condition that requires her to travel for treatment weekly. *Id.*, ¶ 24. Plaintiff alleges that on at least one occasion in the last 18 months, with the most recent occasion being in November 2020, she has fallen out of her wheelchair and down the ramp when trying to navigate the entrance of the Mozart. *Id.* Her fall in November 2020 required emergency medical attention and caused both physical and emotional injuries. *Id.* After the November 2020 fall, Plaintiff again requested that the ramp and wheelchair lift be repaired. *Id.*, ¶¶ 26–27. Defendants have allegedly ignored or dismissed Plaintiff's requests. *Id.*, ¶ 27. Plaintiff asks that this Court (1) declare that Defendants' actions violate the Rehabilitation Act and the DCHRA; (2) enjoin Defendants from failing to reasonably accommodate Plaintiff's disability; (3) award Plaintiff economic and compensatory damages; and (4) award Plaintiff punitive damages. *Id.*, ¶ 88.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the

plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting "plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Defendants offer four grounds to dismiss Plaintiff's claims. *See generally* Def. Mot. First, Defendants argue that the statute of limitations bars Plaintiff's claims under the Rehabilitation Act and the DCHRA. *Id.* at 4–5, 9–10. Second, Defendants contend that certain DCHRA provisions relied upon by Plaintiff do not apply to Defendants. *Id.* at 10–11. Third, Defendants assert that there was no breach of Plaintiff's lease because that document contains no contractual provision that requires Defendants to provide reasonable accommodations. *Id.* at 12–13. And fourth, Defendants claim that there was no breach of the implied covenant of good faith and fair dealing because there was no breach of contract. *Id.* at 15. The Court addresses these arguments in turn.

## I.      Count I — Violation of The Rehabilitation Act

Defendants argue that Plaintiff fails to allege an actionable violation of the Rehabilitation Act within the applicable one-year statute of limitations. *Id.* at 4. Defendants contend that the statute of limitations began to run on the day that Plaintiff first made a request to replace the ramp and wheelchair lift, which was over a year before the suit was filed. *Id.* at 7.[2] Plaintiff

---

[2]      While the Amended Complaint does not identify the date on which Plaintiff first requested that Defendants repair the ramp and the lift, it states that "[o]ver the last several years, Ms. Gatling has fallen out of her wheelchair;"

responds that she requested accommodations related to the ramp and the lift in November 2020, less than two months before filing the instant lawsuit, and that her claim therefore falls squarely within the one-year statute of limitations.  *See* Pl. Opp. at 2–3.

Section 504 of the Rehabilitation Act does not contain an explicit statute of limitations. *See generally* 29 U.S.C. § 794.  It is well established, however, "that when a federal law does not specify a time-limitation in which to bring a claim, courts should look to 'the state statute most closely analogous to the federal Act.'"  *Arthur v. D.C. Housing Authority*, 2020 WL 1821111, at *6 (D.D.C. Apr. 11, 2020) (quoting *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)).  Courts in this district have found that the "DCHRA is the most closely analogous state statute . . . so its one-year statute of limitation applies to [the Rehabilitation Act] as well."  *Id.*

In determining whether Plaintiff's claim under the Rehabilitation Act is barred by the statute of limitations, the relevant question is "whether a new limitations clock begins running each time that a request for accommodations is made anew and denied again."  *Floyd v. Lee*, 968 F. Supp. 2d 308, 324 (D.D.C. 2013).  While the D.C. Circuit has yet to answer this question, there is conflicting authority on this issue in this jurisdiction.  *Compare Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 93 (D.D.C. 2016) (stating that a new request for the same accommodation can restart the statute of limitations clock), *with Stewart v. District of Columbia*, 2006 WL 626921, at *6 (D.D.C. Mar. 12, 2006) (holding that plaintiff's claim was untimely because the statute of limitations began to run on the date of the first request and denial), *and Morgenstein v. Morgan Stanley DW Inc.,* 2007 WL 315090, at *3–4 (D.D.C. Jan. 31, 2007) (holding same); *see also Floyd*, 968 F. Supp. 2d at 324 (collecting cases that consider this issue).

---

"[o]n at least one occasion during the last 18 months . . . she has fallen down the ramp;" and that "Plaintiff, both herself and through her children and caregivers" has repeatedly requested that the ramp and lift "be repaired and/or replaced."  *See* Am. Compl., ¶¶ 17, 21, 22, 24.  These allegations indicate that Plaintiff most likely made her first request for accommodations more than a year before she filed suit.

After reviewing the relevant authority, this Court finds the decision in *Owens-Hart* most persuasive and adopts its reasoning.[3]  *See* 220 F. Supp. 3d 81.  In *Owens-Hart*, the plaintiff first requested an asthma-related accommodation from her employer in March 2009 and made numerous repeated requests for accommodations through July 2013.  *Id.* at 86–88.  The plaintiff filed suit on April 30, 2014, bringing claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the DCHRA.  *Id.* at 89–90.  In moving for summary judgment, the defendant relied on *Stewart* and *Morgenstein* to argue that the claims were untimely and barred by the one-year statute of limitations, because the plaintiff's first request for accommodations was in March 2009.  *Id.* at 92; *see also Stewart*, 2006 WL 626921, at *6; *Morgenstein*, 2007 WL 315090, at *3–4.[4]

The court in *Owens-Hart* ruled that *Stewart* and *Morgenstein* were no longer applicable due to "developments in the law."  *See* 220 F. Supp. 3d at 92.  The court noted that after *Stewart* and *Morgenstein* were decided, "several federal appellate courts have held that 'a new limitations clock begins running each time that a request for accommodations is made anew and denied again.'"  *Id.* (quoting *Floyd*, 968 F. Supp. 2d at 324).  The court cited decisions from the First, Fourth, and Ninth Circuits, all holding that "'an employee who renews his request for particular accommodations may bring suit based on a new "discrete act" of discrimination if the employer against denies his request' because 'each denial constitute[s] a discrete act that . . . [forms] the

---

[3]     Plaintiff's Rehabilitation Act claim is based on Defendants' "failure to accommodate" her disabilities.  *See* Am. Compl., ¶ 42.  While *Owens-Hart* featured employment discrimination, rather than housing discrimination, the plaintiff was similarly seeking relief for a "failure to accommodate" under the Rehabilitation Act and therefore, the analysis regarding the statute of limitations is the same.  *See* 220 F. Supp. 3d at 95; *see also Arthur*, 2020 WL 1821111, at *7 (applying the same statute of limitations analysis under the Rehabilitation Act to claims of disability discrimination based on a failure to accommodate in the housing context).

[4]     While the analysis in *Owens-Hart* focused on statute of limitations for ADA claims, courts evaluate the statute of limitations under the Rehabilitation Act and the ADA using the same standards.  *See Kennedy v. Gray*, 83 F. Supp. 3d 385, 390–91 (D.D.C. 2015); *Owens-Hart*, 220 F. Supp. 3d at 95 (applying the same analysis in deciding statute of limitations issue under ADA and Rehabilitation Act claims).

basis for a separate claim of discrimination and carrie[s] with it a new statute of limitations.'"

*Id.* at 93 (quoting *Tobin v. Liberty Mutual Ins. Co.*, 553 F.3d 121, 131–32 (1st Cir. 2009)); *see also Tobin*, 553 F.3d at 133 (finding that the "[t]he pivotal question in assessing the statute of limitations issue is whether [plaintiff] made a specific request for accommodation that was denied during the statutory periods[.]"); *Hill v. Hampstead Lester Morton Court Partners LP*, 581 Fed. App'x 178, 181 (4th Cir. 2014) (finding that repeated denials of requests for accommodations each constituted "independent and discrete act[s] of discrimination" under the Rehabilitation Act); *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (stating that "[e]ach of the . . . denials of the Employees' requests for [a reasonable accommodation] constitutes a discrete act of alleged discrimination.").[5]

Consistent with *Tobin*, *Hill*, and *Cherosky*, the court in *Owens-Hart* ruled that "[a] new request for the same accommodation will restart the statute of limitations clock, but a mere request for reconsideration of a prior denial will not." *See* 220 F. Supp. 3d at 93.  Accordingly, the "court's focus must be on discerning whether the facts presented reflect a situation 'in which the employer commits multiple acts, each of which is independently discriminatory,' or one 'in which an employee attempts to rely on . . . the employer's single discriminatory act[.]'"  *Id.* (quoting *Tobin*, 553 F.3d at 131).  In denying summary judgment, the court in *Owens-Hart* found that there were genuine issues of material fact as to whether Plaintiff's requests were new requests or mere requests for reconsideration.  *Id.* at 93–94 (stating that the extended lapse of

---

[5]     The Court has not found any other federal appellate opinions that have considered this issue after *Owens-Hart*, but several federal district courts have applied the reasoning in *Owens-Hart* and *Tobin*.  *See e.g., Ragusa v. Lehigh Univ.*, 2019 WL 3573516, at *5 (E.D. Pa. Aug. 6, 2019) (citing *Owens-Hart* for the proposition that whether a request for an accommodations is an entirely new request or merely a request for reconsideration is one for a reasonable jury to decide); *Antidormi v. Nat'l R.R. Passenger Corp.*, 2021 WL 3403733, at *5–6 (N.D.N.Y. Aug. 4, 2021) (citing *Tobin* in finding that a mere request to reconsider a request for accommodations cannot restart the statute of limitations clock); *Robinson v. Office of the Cook County Recorder of Deeds*, 2021 WL 1165100, at *9–10 (N.D. Ill. Mar. 26, 2021) (denying a motion to dismiss after finding that the record was too undeveloped for the court to determine whether the request for accommodations was a request for reconsideration).

time between the requests could "cause a reasonable factfinder to conclude that the requests . . . were not mere requests for reconsideration" and that because plaintiff's ask "was a request for a *different* kind of accommodation . . . a reasonable factfinder could conclude that her requests . . . were not mere requests for reconsideration[.]") (emphasis in original).

Here, the Court is unable to discern from the Amended Complaint whether Plaintiff's November 2020 request for accommodations was a new, discrete request or one for reconsideration of Defendant's prior refusal to fix the wheelchair ramp and wheelchair lift. The Amended Complaint states only that "[a]fter that November 2020 fall, Ms. Gatling . . . has requested that the ramp be repaired" and "requested that the wheelchair lift . . . be repaired and/or replaced[.]" *See* Am. Compl., ¶¶ 26–27. The Amended Complaint does not specify when Plaintiff first made a request for accommodations, nor does it specify whether the November 2020 request differed from prior requests. *Id.*, ¶¶ 21–23, 26–27. Moreover, the parties disagree about whether Plaintiff's fall from her wheelchair in November 2020 was a change in circumstances that altered the nature of the request. *See* Def. Reply at 3 (arguing that Plaintiff fails to allege any changed circumstances to reflect an alteration in the nature of her request); Pl. Opp. at 3 (arguing that Plaintiff's circumstances changed in November 2020 when she fell and suffered injuries requiring medical attention).[6] While the court in *Owens-Hart* stated that "'[C]hanges in either the employee's condition or the workplace environment' are not necessary for the statute of limitations to reset," *see* 220 F. Supp. 3d at 93, evidence of such a change could bear on whether plaintiff's most recent request was of a different nature, *see id.* at 94.

Because the Court is unable to determine at this time whether the November 2020 request

---

[6]     Defendants also argue that Plaintiff cannot rely on the continuing-violation doctrine to extend the statute of limitations period. *See* Def. Mot. at 6–7. There is no indication, however, that Plaintiff is attempting to rely on such a doctrine, as Plaintiff does not allege this in the Amended Complaint and does not argue it in her Opposition. *See generally* Am. Compl.; Pl. Opp.

for accommodations was a new request that restarted the clock on the statute of limitations, or a request for reconsideration of a prior denial, the Court will deny Defendants' Motion to Dismiss as to Count I without prejudice. Defendants may raise this argument again, if appropriate, after discovery. Plaintiff's request for punitive damages on this claim, however, will be dismissed because she concedes in her Opposition that punitive damages are not available under the Rehabilitation Act. *See* Pl. Opp. at 5 n.3.

## II.        Count II — Violation of DCHRA

### A.        *Statute of Limitations*

Defendants reprise their statute of limitations argument regarding Plaintiff's DCHRA claim. *See* Def. Mot. at 9. Unlike the Rehabilitation Act, the DCHRA contains an explicit one-year statute of limitations. *See* D.C. Code § 2-1403.16 ("A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof[.]"). "[B]ecause the same standard governs [Rehabilitation Act], ADA, and DCHRA claims alike," the foregoing analysis from *Owens-Hart* concerning the statute of limitations applies to Plaintiff's DCHRA claims as well. *See* 220 F. Supp. 2d at 96. For the reasons discussed *supra,* the Court denies Defendant's Motion to Dismiss the DCHRA claim, to the extent that it relies on the statute of limitations.

### B.        *DCHRA Design & Construction Standards*

In the alternative, Defendants argue that Count II should be dismissed because the design and construction provisions of the DCHRA, on which Plaintiff relies, do not apply to the Mozart. *See* Def. Mot. at 11. Count II states that "Defendants have discriminated against Plaintiff on the basis of her disability and/or in housing in violation of D.C. Code § 2-1402.21[.]" *See* Am. Compl., ¶ 56. While the Amended Complaint does not specify the subsection of D.C. Code § 2-

1402.21 on which Plaintiff bases her claim, Plaintiff clarifies in her Opposition that she is relying on subsection (d)(3)(D).[7]  *See* Pl. Opp. at 7.

Subsection (d)(3)(C) of D.C. Code § 2-1402.21 prescribes design and construction requirements for certain dwellings, while subsection (d)(3)(D) contains adaptive-design requirements.  *See generally* D.C. §§ Code 2-1402.21(d)(3)(C)–(D).  Defendants argue that to the extent Plaintiff alleges discrimination based on either of these design and construction subsections, her claim should be dismissed because those subsections apply only to dwellings first occupied after 1999, and the Mozart was built in the 1930s.[8]  *See* Def. Mot. at 11. Subsection (d)(3)(C) contains an effective-date restriction as to its applicability, and reads as follows:

> "[U]nlawful discrimination" includes [i]n connection with the design and construction of *covered multifamily dwellings* for first occupancy after April 20, 1999, a failure to design and construct *these dwellings* in a manner that
>
> (i)     The public and common use portions of the dwellings are readily accessible to and usable by persons with disabilities; and
>
> (ii)    Doors designed to allow passage into and within all premises within the dwellings are sufficiently wide to allow passage by persons with wheelchairs.

---

[7]     Plaintiff further attempts to argue that Defendants fail to comply with applicable requirements under D.C. Code § 2-1402.21(d)(4), which states that "[c]ompliance with the appropriate requirements of the American National Standard for building and facilities providing accessibility and usability for persons with disabilities suffices to satisfy the requirements of paragraph (3) of this subsection."  *See* Pl. Opp. at 8; D.C. Code § 2-1402.21(d)(4).  Plaintiff argues that the ramp in the Mozart does not comply with the American National Standard requirements, and therefore, is in violation of the DCHRA.  *See* Pl. Opp. at 8–11.  Plaintiff relies on Google Earth photos, along with a series of calculations, to estimate the slope of the existing ramp.  *Id.*  The Court declines to consider this argument.  On a motion to dismiss, Plaintiff cannot rely on materials not included in the Amended Complaint.  *See Tyson v. Brennan*, 306 F. Supp. 3d 365, 369 (D.D.C. 2017) ("[T]he court must limit its analysis [of a motion to dismiss] to the four corners of the complaint[.]").  Moreover, Plaintiff's slope calculations based on Google Earth photos are speculative.

[8]     The Trustees Deed for the Mozart was filed with the D.C. Recorder of Deeds in 1928.  *See* Def. Mot., Ex. A.  The Court may consider this document "without converting [the] motion to dismiss into one for summary judgment" because the deed is a public record.  *See Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 29 n.3 (D.D.C. 2014).

D.C. Code § 2-1402.21(d)(3)(C) (emphasis added).  Subsection (d)(3)(D) refers to "dwellings,"

just as subsection (d)(3)(C) does, but contains no explicit effective-date restriction on its

applicability:

> All premises within *the dwellings* shall contain the following features of adaptive design:
>
> > (i)      An accessible route into and through the dwelling;
> >
> > (ii)     Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations . . .
> >
> > (v)     The premises within *the dwellings* shall have at least 1 building entrance on an accessible route unless it is impracticable because of the terrain or unusual characteristics of the site.

D.C. Code § 2-1402.21(d)(3)(D) (emphasis added).

Defendants argue that the requirements of subsections (d)(3)(C) and (d)(3)(D) apply to

the same set of "dwellings" — those first occupied after April 20, 1999.  *See* Def. Mot. at 10–11.

Defendants contend that subsection (d)(3)(D) "makes no sense without reference to the effective

date language contained in subpart (d)(3)(C)," even though subsection (d)(3)(D) does not

expressly contain the date restriction or refer to it.  *See* Def. Reply at 6.  Defendants cite a canon

of statutory interpretation, which states that sections of statutory provisions should be construed

as complementary, not conflicting, especially when adopted by the same legislature at the same

time.  *Id.* (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)).  Accordingly, Defendants argue

that the "dwellings" covered by subsection (d)(3)(D) are the same ones (first occupied after

1999) as those covered by subsection (d)(3)(C), and that neither subsection applies to the Mozart

(which was first occupied in the 1930s).  *Id.* at 7.

Plaintiff argues that subsections (d)(3)(C) and (d)(3)(D) must be read independently from

each other.  *See* Pl. Opp. at 7.  Plaintiff contends that because subsection (d)(3)(D) does not have

an explicit effective date, the distinction between it and subsection (d)(3)(C) must be deliberate. *Id.* Plaintiff relies on a competing canon of statutory interpretation, which states that "[w]hen the legislature uses a term or phrase in one . . . provision but excludes it from another, courts do not imply an intent to include the missing term in [the] . . . provision where the term or phrase is excluded." *See* Pl. Opp. at 7 (quoting *Doe v. Burke*, 133 A.3d 569, 574 (D.C. 2016)). Thus, Plaintiff infers that the effective-date restriction of subsection (d)(3)(D) was deliberately excluded from subsection (d)(3)(C), and the latter section applies to the Mozart. *Id.*

The Court finds Defendants' argument more persuasive. "In addressing a question of statutory interpretation, [the Court] begin[s] with the text." *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018). It looks "not only to 'the particular statutory language at issue,' but also 'the language and design of the statute as a whole.'" *Delaware Dep't of Nat. Res. and Envtl. Control v. EPA (Delaware DNR)*, 895 F.3d 90, 97 (D.C. Cir. 2018) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). "Therefore, when one statutory provision informs the meaning of another at issue, [it] must apply interpretive tools to *both*." *Id.* (emphasis in original). Further, "the cannons of statutory interpretation instruct courts to avoid construing the text of a statute to be contradictory: '[its] task is to fit, if possible, all parts into a harmonious whole.'" *Humane Society of the United States v. McCarthy*, 209 F. Supp. 3d 280, 285 (D.D.C. 2016) (quoting *Roberts v. Sea-Land Servs., Inc.*, 556 U.S. 93, 100 (2012)).

In examining the text of the statute, the Court first looks for evidence of whether the "dwellings" referred to in subsection (d)(3)(D) are the same "dwellings" referred to in subsection (d)(3)(C). The "dwellings" referred to in subsection (d)(3)(C) expressly cover "multifamily dwellings" such as apartment buildings, and include requirements addressing "common and public use portions." *See* D.C. Code § 2-1402.21(d)(3)(C)(i). While subsection (d)(3)(D) does

not state explicitly that the "dwellings" it discusses are multifamily dwellings, its requirements indicate that they are.  Subsection (d)(3)(D) refers to "premises within the dwellings," which appears to be a reference to units within a multifamily building.  *See* D.C. Code § 2-1402.21(d)(3)(D)(v).  Moreover, the statute's reference to "at least 1 building entrance on an accessible route" makes the most sense as a requirement for a multi-unit apartment building.  *See id.*  The Court takes this as evidence that the "dwellings" mentioned in subsection (d)(3)(D) refer to the same "dwellings" as in subsection (d)(3)(C).

The Court also looks to the language and design of the rest of the statute to shed light on the meaning of "dwellings" in subsection (d)(3)(D).  *See Delaware DNR*, 895 F.3d at 97.  While other provisions of the statute use the term "dwelling," only subsections (d)(3)(C) and (d)(3)(D) use the plural "dwellings."  *See generally* D.C. Code § 2-1402.21.  This is additional evidence that subsections (d)(3)(C) and (d)(3)(D) refer to the same "dwellings."  When looking at the statutory text as a whole and reading both sections to be harmonious, subsections (d)(3)(C) and (d)(3)(D) should be read in concert to be referring to the same "dwellings."  *See Delaware DNR*, 895 F.3d at 97; *Humane Society*, 209 F. Supp. 3d at 285.

Finally, the Court considers the analogous provision found in the Fair Housing Act ("FHA").  "District of Columbia courts interpreting the DCHRA 'have generally looked [for guidance] to cases from federal courts' arising under federal civil rights statutes."  *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) (quoting *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299, 1301–02 (D.C. 1994)) (alteration in original).  In interpreting the DCHRA, courts in this district have relied upon interpretations of analogous provisions of the FHA for guidance.  *See Borum v. Brentwood Village, LLC*, 218 F. Supp. 3d 1, 16 (D.D.C. 2016) (finding that the "plain language of the DCHRA commands the same finding as the language of

the FHA" when the two statutes had similar language); *Hunter v. District of Columbia*, 64 F.

Supp. 3d 158, 179 (D.D.C. 2014) (stating that where the DCHRA language parallels analogous

provisions of the FHA, the "section of the DCHRA and the FHA should be interpreted in a

parallel fashion").

      The FHA has substantially similar design and construction requirements as those under

the DCHRA, with one key difference — the FHA contains a single provision, 42 U.S.C.

§ 3604(f)(3)(C), that appears to combine the requirements that are outlined in subsections

(d)(3)(C) and (d)(3)(D) of the DCHRA.  The relevant provision of the FHA has an effective-date

restriction, and reads as follows:

> (C) in connection with the design and construction of *covered multifamily dwellings* for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct *those dwellings* in such a manner that —
>
>> (i)    the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
>>
>> (ii)    all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>>
>> (iii)    all premises within *such dwellings* contain the following features of adaptive design:
>>
>>> (I) an accessible route into and through the dwelling;
>>>
>>> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
>>>
>>> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>>>
>>> (IV) usable kitchens and bathrooms such that an

> individual in a wheelchair can maneuver about
> the space.

42 U.S.C. § 3604(f)(3)(C) (emphasis added).  Thus, a substantively similar provision of the FHA uses identical language to impose identical adaptive-design requirements as those enumerated in subsection (d)(3)(D), and the FHA provision contains an effective-date limitation.  Because the requirements of the FHA in this regard mirror those of the DCHRA, the Court finds it persuasive that the FHA applies the adaptive-design requirements only to multifamily dwellings that were first occupied after 1988.  *See Borum*, 218 F. Supp. 3d at 16; *Hunter*, 64 F. Supp. 3d at 179.  This strongly suggests that the identical adaptive-design requirements in the DCHRA also were intended to have limited applicability based on the age of the building in question.

The Court thus concludes that the "dwellings" referred to in subsection (d)(3)(D) are the same "dwellings" referred to in subsection (d)(3)(C), and that the requirements under subsection (d)(3)(D) therefore apply only to buildings first occupied after April 20, 1999.  Because the Mozart was constructed in the 1930s, that provision does not apply to the Mozart.  Accordingly, the Court will grant Defendants' Motion to Dismiss Count II.

## III.    Count III — Violation of D.C. Code § 2-1402.62

In Count III, Plaintiff alleges a violation of D.C. Code § 2-1402.62, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the [DCHRA]."  *See* D.C. Code § 2-1402.62.  Here, Plaintiff alleges that Defendants aided and abetted a violation of D.C. Code § 2-1402.21.  *See* Am. Compl., ¶ 67 ("Defendants have aided and/or abetted discrimination against Plaintiff on the basis of her disability and/or in housing in violation of D.C. Code § 2-1402.21.")  As already discussed, however, Plaintiff fails to state a claim under D.C. Code § 2-1402.21, because the adaptive-design subsection she relies upon does not apply to the Mozart.  *See supra* Section II.b.

Plaintiff therefore fails to state a claim under Section § 2-1402.62 because there is no underlying violation of the DCHRA for Defendants to aid and abet.  *See* D.C. Code § 2-1402.62. Accordingly, the Court will dismiss Count III of the Amended Complaint.

## IV.   Count IV — Breach of Contract

Count IV alleges that JHLP breached Plaintiff's lease agreement by discriminating against Plaintiff based on her disability, and by refusing to provide reasonable accommodations in the form of a wheelchair lift and building entrance ramp.  *See* Am. Comp., ¶¶ 75–77. Defendants argue that there is no provision in the lease that requires them not to discriminate or to provide reasonable accommodations.  *See* Def. Mot. at 11–12.  Defendants argue that because Plaintiff has failed to identify any contractual provision that would obligate them to grant the accommodation requests, there can be no actionable breach of contract.[9]  *Id.* at 12–13.

Under District of Columbia law, a claim for breach of contract includes four elements: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Ihebereme v. Capitol One, N.A.*, 730 F. Supp. 2d 40, 47 (D.D.C. 2010) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 189 (D.C. 2009)).  "Obviously, one cannot breach a contract without breaching a particular obligation created under the contract, and thus, 'in the absence of a contractual obligation . . . [a] defendant[] could not have breached [a] contract.'"  *Id.* (quoting *Schoen v. Consumers United Group, Inc.*, 670 F. Supp. 367, 378 (D.D.C. 1986)).

A thorough reading of the lease between Plaintiff and JHLP reveals no contractual provision that would obligate Defendants to grant reasonable accommodations or to refrain from discriminating against Plaintiff based on her disability.  *See* Def. Mot., Ex. C (Lease Agreement

---

[9]      Defendants also argue that Plaintiff fails to allege damages caused by the breach of contract.  *See* Def. Mot. at 13.  The Court need not reach this argument as it finds that Plaintiff fails to state a claim for breach of contract.

between Plaintiff and JHLP).  Plaintiff argues that Paragraph 33 of the lease, which is a Release

of Liability from Accident and Inconvenience, contemplates that JHLP will not engage in

intentional conduct that injures a tenant.  *See* Pl. Opp. at 14.  Paragraph 33 provides: "Except

damages or injury arising as a direct result of JUBILEE'S intentional conduct or negligence . . .

JUBILEE is released and discharged from any and all liability, claim, and expense resulting from

any accident, injury, . . . property damage, theft or breach of trust."  *See* Lease Agreement, ¶ 33.

The Court is unconvinced that this lease provision affirmatively obligates Defendants to provide

reasonable accommodations to Plaintiff for her disability.  Because Defendants cannot breach a

contract absent a contractual provision that obligates them to perform in the manner asserted by

Plaintiff, Plaintiff fails to state a claim for breach of contract.  *See Ihebereme*, 730 F. Supp. 2d at

47.

        In an apparent acknowledgement that the terms of the lease do not favor her position,

Plaintiff offers an alternative argument that relies on certain U.S. Department of Housing and

Urban Development ("HUD") regulations:  Plaintiff contends that the HUD regulations are

incorporated into the lease and require Defendants to provide reasonable accommodations.  *See*

Pl. Opp. at 12.  Plaintiff asserts that JHLP's acceptance of financial assistance from HUD makes

JHLP an "owner entity" under the regulations.  *Id.* [10]  HUD regulations on "lease requirements"

require an "owner entity" to provide "reasonable accommodation[s] to the extent necessary" to

handicapped people.[11]  *Id.* at 13 (quoting 24 C.F.R. § 966.7).  Defendants respond that it is

---

[10]     Plaintiff argues that "Defendant JHLP receives federal financial assistance from the U.S. Department of
Housing and Urban Development ('HUD')."  *See* Pl. Opp. at 12 (citing Am. Compl., ¶¶ 9, 12, 41).  "As such, HUD
places affirmative lease obligations on an 'Owner Entity,' just as it does on a public housing agency receiving
federal financial assistance ('PHA')."  *Id.*  (citing 24 C.F.R. § 908108 (defining 'Owner Entity' and stating that
'[t]he Owner Entity is subject to the applicable requirements of this subpart.')).

[11]     Plaintiff also cites and relies on 24 C.F.R. §§ 944.4(e)(1), (2), (4), and (5).  *See* Pl. Opp. at 12.  However, as
Defendant notes, there are no such provisions in the C.F.R.  If Plaintiff meant 24 C.F.R. § 966.4, the Court notes that
the provision applies only to Public Agency Housing leases, and none of the Defendants are Public Housing
Agencies as defined by HUD.

"simply incorrect for Plaintiff to assert her lease incorporates all of the HUD lease regulations when those regulations are not found within the four corners of Plaintiff's lease."  *See* Def. Reply at 11.

The Court agrees with Defendants that the HUD regulations are not incorporated into Plaintiff's lease.[12]  The lease contains an integration clause that states, "This Lease contains the final and entire understanding between the parties and no party shall be bound by any term, condition or representation, oral or written, not set forth in this Lease."  *See* Lease Agreement, ¶ 47.  An integration clause "indicat[es] that the contract represents a complete and final expression of the parties' wishes."  *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 113 (D.D.C. 2013).  Thus, Plaintiff's reliance on HUD regulations is misplaced and cannot revive her breach-of-contract claim.

Lastly, Plaintiff attempts to argue that Defendants breached the implied warranty of habitability and the common law covenant of quiet enjoyment by failing to keep the wheelchair ramp and wheelchair lift in proper working order.  *See* Pl. Opp. at 15, 16–17.  Plaintiff, however, alleges no breach of the implied warranty of habitability or breach of the covenant of quiet enjoyment in her Amended Complaint; and she may not amend the complaint in her brief in opposition to a motion to dismiss.  *See Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 85 n.2 (D.D.C. 2014).  Accordingly, the Court will grant Defendants' Motion to Dismiss Count IV.

## V.    Count V — Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Count V must be dismissed because in the absence of an express

---

[12]     Plaintiff also attempts to rely on certain provisions of the HUD Occupancy Handbook and a model lease from the Ontario, a different building owned by Defendants.  *See* Pl. Opp. at 13.  Plaintiff argues that these model leases contain anti-discrimination provisions, and that it is suspicious that her lease does not.  *Id.*  These model lease provisions do not impose contractual obligations on Defendants.  Plaintiff is required to rely on the four corners of her lease, and provisions from outside sources cannot be considered to support a claim of breach of contract.

contractual obligation, a breach of the implied covenant of good faith and fair dealing cannot

occur.  *See* Def. Mot. at 15.  Plaintiff argues that because she presented a viable breach of

contract claim, her breach of the implied covenant of good faith and fair dealing claim is

sufficient.  *See* Pl. Opp. at 18–19.

  As an initial matter, the Court notes that the Amended Complaint erroneously states that

the Contract "contains a provision that JHLP shall not discriminate against renters, including

Plaintiff, on the basis of disability" and "contains a covenant that the parties shall deal with each

other in good faith and fairly."  *See* Am. Compl., ¶¶ 81–82.  The lease does not contain any such

provision.  *See generally* Lease Agreement.  Nevertheless, an express covenant is not necessary

to sustain a claim of breach of the covenant of good faith and fair dealing.  "[I]n every contract

there is an implied covenant that neither party shall do anything which will have the effect of

destroying or injuring the right of the other party to receive the fruits of the contract, which

means that in every contract there exists an implied covenant of good faith and fair dealing."

*Jefferson v. Collins*, 210 F. Supp. 3d 75, 87 (D.D.C. 2016) (quoting *Himmelstein v. Comcast of

the Dist., LLC*, 908 F. Supp. 2d 49, 53 (D.D.C. 2012)) (alteration in original).

  "Liability lies for breach of the duty [of good faith and fair dealing] if a party (1) evades

the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with

performance by the other party."  *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 276

(D.D.C. 2009).  Plaintiffs claiming such a breach "must allege either bad faith or conduct that is

arbitrary or capricious."  *Rodriguez v. Laboratory Corp. of AmericaHoldings*, 13 F. Supp. 3d

121, 134 (D.D.C. 2014) (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)).  The

D.C. Circuit has not ruled on whether a breach of the implied covenant is actionable absent a

breach of contract.  *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 8 (D.D.C. 2013).  "Ultimately, the

relevant question in a claim concerning the duty of good faith and fair dealing is whether a party's actions 'destroy[] or injur[e] the right of the other party to receive the fruits of the contract.'" *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 35 (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)); *see also C & E Servs.*, 601 F. Supp. 2d at 275 (stating that "the duty is not a means to add new terms to the agreement; it merely requires that the parties behave fairly and reasonably in the performance and enforcement of the contract").

Count V states that "Defendant JHLP has breached the covenant of good faith and fair dealing in the Contract by . . . denying requested reasonable accommodations for her disabilities." *See* Am. Compl., ¶ 85.  Because Defendants had no duty or obligation to provide reasonable accommodations under the lease, *supra* Section IV, Plaintiff's receipt of such accommodations was not a "fruit of the contract."  *See Jefferson*, 210 F. Supp. 3d at 87.  Thus, Defendants did not "injure[] the rights of [Plaintiff] to receive the fruits of the contract" by failing to provide the requested accommodations.  *See id.*  Plaintiff fails to allege that Defendants acted in bad faith or attempted to evade the spirit of the lease in any manner other than declining to provide reasonable accommodations.  *See Rodriguez*, 13 F. Supp. 3d at 134; *C & E Servs., Inc.*, 601 F. Supp. 2d at 276.  Accordingly, the Court will grant Defendants' Motion to Dismiss Count V.

**CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to Counts II, III, IV, and V; will deny Defendants' Motion to Dismiss as to Count I but will dismiss Plaintiff's claim for punitive damages under Count I; and will deny Plaintiff's Motion to Expedite.  A separate Order will issue this day.

_____
Florence Y. Pan
United States District Judge

Date:   November 16, 2021