**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CYNTHIA GATLING,**

      *Plaintiff*,

    **v.**

**JUBILEE HOUSING, INC.,** *et al.*,

      *Defendants*.

**Civil Action No. 20-3770 (FYP)**

---

<u>**MEMORANDUM OPINION**</u>

Plaintiff Cynthia Gatling is a wheelchair user who lives in an apartment building owned and operated by Defendants Jubilee Housing, Inc., and Jubilee Housing Limited Partnership. *See* ECF No. 16 (Amended Complaint), ¶ 7. Gatling alleges that the wheelchair ramp she must use to access the building is unsafe, and that the building's wheelchair lift has been inoperable for years. *See generally id.* When Defendants refused to fix these problems after multiple requests, Plaintiff filed suit. After amending her complaint once, this Court dismissed all but one of Plaintiff's claims, *see* ECF No. 23 (Memorandum Opinion). Gatling now brings the instant Motion seeking Leave to File a Second Amended Complaint. *See* ECF No. 24 (Plaintiff's Motion).[1] For the following reasons, this Court grants in part and denies in part Plaintiff's Motion.

**BACKGROUND**

Plaintiff Cynthia Gatling resides at the "Mozart," a low-income apartment building located at 1630 Fuller Street, N.W., Washington, D.C. *See* Am. Compl., ¶ 1. Defendant Jubilee

---

[1] Defendants filed an opposition, *see* ECF No. 26 (Defendants Opposition), and Plaintiff filed a reply, *see* ECF No. 27 (Plaintiff's Reply).

Housing, Inc., is a non-profit in Washington, D.C., that provides affordable housing through various financing programs and structures. *Id.*, ¶ 8.  In September 2005, Jubilee Housing, Inc., sold the Mozart to Defendant Jubilee Housing Limited Partnership ("JHLP").  *Id.*, ¶ 11.  The two Defendants jointly own and operate the Mozart.  *Id.*

Gatling alleges that, over the last several years, she has fallen out of her wheelchair while entering and exiting the Mozart because the wheelchair ramp at the front of the building is too steep and is not in compliance with architectural standards.  *Id.*, ¶ 17.  Moreover, Gatling allegedly cannot access the building's mailroom because there is a step leading into the room that prevents wheelchair access.  *Id.*, ¶ 19.  She also alleges that the wheelchair lift on the side of the building has been inoperable for years.  *Id.*, ¶ 20.  Plaintiff, her children, and her caregivers have repeatedly requested that the wheelchair lift, and wheelchair ramp be repaired or replaced. *Id.*, ¶¶ 21–22.  Defendants have allegedly ignored or dismissed those requests.  *Id.*, ¶ 27.

Gatling filed her original Complaint on December 21, 2020.  *See* ECF No. 1.  Her original Complaint alleged claims under the Fair Housing Act and violations of the D.C. Human Rights Act ("DCHRA").  *See generally id.*  After Defendants filed a Motion to Dismiss, *see* ECF No. 13, Plaintiff requested, and was granted, permission to file an Amended Complaint.  *See* ECF No. 14, Minute Order dated March 4, 2021.  Gatling's Amended Complaint alleged (1) violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"); (2) violations under the DCHRA, D.C. Code § 2-1401.01 *et seq.*; (3) breach of her lease agreement; and (4) breach of the covenant of good faith and fair dealing implied by her lease agreement. *See* Am. Compl., ¶ 1.  After Defendants filed a renewed Motion to Dismiss, *see* ECF No. 17, this Court dismissed all of Plaintiff's claims in the Amended Complaint except for the Rehabilitation Act claim.  *See* Mem. Op.  Gatling now seeks leave to file a Second Amended Complaint.

## LEGAL STANDARDS

"[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  The court, must, however, heed Federal Rule of Civil Procedure 15's mandate that leave is to be "freely given when justice so requires."  *Id.*; *see* Fed. R. Civ. P. 15(a)(2).  "Thus, leave to amend may ordinarily be denied based only upon sufficient reasons, such as 'undue delay, bad faith[,] . . . repeated failures to cure deficiencies[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Townsend v. United States*, 282 F. Supp. 3d 118, 124 (D.D.C. 2017) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006).  An amendment may be unduly prejudicial if it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." *Id.* (citation omitted).

## ANALYSIS

Gatling seeks leave to amend her complaint for the second time, proposing to add three claims under various provisions of the DCHRA related to disability discrimination:  D.C. Code §§ 2-1402.21(a)(4), (d)(2)(A), and (d)(3)(B); and D.C. Code § 2-1402.62.  She also requests leave to add claims of breach of the implied covenant of good faith and fair dealing; breach of the warranty of habitability; and breach of the covenant of quiet enjoyment.  *See generally* Sec. Am. Compl.  Defendants assert that the Motion to Amend should be denied because Plaintiff already "had sufficient opportunity to state a plausible claim."  *See* Def. Opp. at 5.  Defendants

argue that granting leave to amend would be unduly prejudicial to Defendants and that the new proposed claims are futile. *Id.* The Court addresses these arguments in turn.

## I.    Undue Prejudice and Substantial Delay

Defendants first argue that granting leave to amend would be unduly prejudicial and would significantly delay the resolution of the case. *See* Def. Opp. at 5. Moreover, Defendants contend that Plaintiff relies on facts which were already known to her, and she should not be allowed to "seek a third bite at the apple." *Id.*

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." *Djourabchi*, 240 F.R.D. at 13. Yet the Court is not convinced that Defendants would be substantially prejudiced by a second amendment of the complaint. Courts rarely find prejudice in the early stages of litigation where, as here, discovery has not yet commenced. *See, e.g.*, *Darbeau v. Progressive Tech. Fed. Sys. Inc.*, No. 06-cv-1080, 2007 WL 744726, at *1 (D.D.C. Mar. 7, 2007) (finding defendant would not be prejudiced because "no discovery has been taken to date"). Furthermore, prejudice is unlikely to exist when the amended complaint is based on the "same nucleus of facts" as the original one. *See Johnson v. District of Columbia*, No. 13-cv-1445, 2015 WL 4396698, at *3 (D.D.C. Jul. 17, 2015) (finding no prejudice where the amended complaint was based on the same facts as the first complaint and merely served to clarify plaintiff's allegations); *see also Dave v. District of Columbia*, 811 F. Supp. 2d 111, 120 (D.D.C. 2011) (prejudice may exist when the amendment would "expand the allegations beyond the scope of the initial complaint"). Here, the Second Amended Complaint rests on the same factual allegations as Plaintiff's prior pleadings. *See* Def. Opp. at 5 (arguing that the "underlying facts upon which

Plaintiff relies have not fundamentally changed"). The Court therefore discerns no substantial prejudice to Defendants by allowing Plaintiff to amend her complaint for a second time.

Defendants also assert that leave should be denied because of the potential delay in resolving the case. *See* Def. Opp. at 5. This argument is equally unavailing. "[T]he contention of undue delay is less persuasive in light of the lack of any prejudice." *Clark v. Feder Semo & Bard, PC*, 560 F. Supp. 2d 1, 5 (D.D.C. 2008). Additionally, the "length of a litigation is relevant only insofar as it suggests either bad faith on the part of the moving party or potential prejudice to the non-moving party[.]" *Caribbean Broad. Sys., Ltd. v. Cable & Wireless, PLC.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998). A court "should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend." *Appalachian Voices v. Chu*, 262 F.R.D. 24, 27 (D.D.C. 2009) (citing *Atchison v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996)). Here, any delay is likely to be modest, given that discovery has not even commenced. The Court also does not find any bad faith on the part of Plaintiff, nor any substantial prejudice to Defendants. The alleged delay in the proceedings is therefore not a sufficient reason to deny Plaintiff's motion.

## II.    Futility

Defendants argue that leave to amend should be denied because Plaintiff's proposed claims are all futile. *See* Def. Opp. at 6. "An amended complaint would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). Thus, for practical purposes, review for futility is identical to that for a Rule 12(b)(6) motion to dismiss. *See In re Interbank Funding Corp. Sec. Litig. v. Radin Glass & Co, LLP*, 629 F.3d 213, 215–16 (D.C. Cir.

2010); *see also Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits.").

       a.    <u>D.C. Code § 2-1402.21(a)(4)</u>

Gatling's first proposed new claim alleges a violation of D.C. Code § 2-1402.21(a)(4). *See* Sec. Am. Compl., ¶¶ 68–69. This provision of the DCHRA states that "[i]t shall be an unlawful discriminatory practice" to "refuse or restrict facilities, services, repairs or improvements for a tenant or lessee" for "a discriminatory reason based on [an] actual or perceived . . . disability." D.C. Code § 2-1402.21(a)(4). Gatling alleges that Defendants' failure to provide legally compliant accessibility equipment "discriminated against [her] on the basis of disability" by "significantly restricting the facilities, services and/or improvements on the Subject Property." Sec. Am. Compl., ¶ 69.

The facts alleged by Gatling do not state a claim under Section 2-1402.21(a)(4). The statute provides that there must be a "discriminatory reason" for the discriminatory practice, and that the violation must be "based on . . . disability." D.C. Code. § 2-1402.21(a). In other words, this provision of the DCHRA requires discriminatory intent or animus on the part of Defendants. *See, e.g.*, *Brandywine Apartments, LLC v. McCaster*, 964 A.2d 162, 167 (D.C. 2009) (requiring "intentional and purposeful conduct" based on membership in a protected class under D.C. Code § 2-1402.21(a)); *Henneghan v. District of Columbia*, 916 F. Supp. 2d 5, 11 (D.D.C. 2013) (dismissing a claim under D.C. Code § 2-1402.21(a) because the complaint did not allege a "discriminatory reason for [the] alleged violation"). Gatling's theory of liability is simply that Defendants refused to make improvements to the Mozart that would have given her full access to the building and its amenities. She does not allege that Defendants' conduct was motivated by

discriminatory animus based on her disability.  She thus fails to state a claim of discrimination "based on" her disability within the meaning of Section 2-1402.21(a)(4).  The Court therefore denies her request to amend the complaint to add this futile claim.

       b.      <u>D.C. Code §§ 2-1402.21(d)(2)(A) & (d)(3)(B)</u>

Gatling also proposes new claims asserting violations of other provisions of the DCHRA — D.C. Code § 2-1402.21(d)(2)(A) and D.C. § Code 2-1402.21(d)(3)(B).  Subsection (d) of D.C. Code § 2-1402.21 deals specifically with disability and states:

> (d)  Disability –
>
> . . .
>
> (2) It shall be *unlawful to discriminate* against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of:
>
> > (A) That buyer or renter; or
> >
> > (B) Any person residing in or intending to reside in that dwelling after it is sold, rented or made available; or any person associated with that buyer or renter.
>
> (3) For the purpose of this subsection, "*unlawful discrimination*" includes:
>
> . . .
>
> > (B) A refusal to make reasonable accommodations in rules, policies, practices, or services, when these accommodations may be necessary to afford any person equal opportunity to use and enjoy a dwelling.

D.C Code § 2-1402.21(d) (emphasis added).

Gatling alleges that Defendants' refusal to provide legally complaint accessibility equipment "discriminated against Ms. Gatling on the basis of disability" by "adversely affecting the terms, conditions and/or privileges" of her occupancy, and by "substantially restricting her ability to use and enjoy the Subject Property like other non-disabled residents."  Sec. Am.

Compl., ¶ 71.  She goes on to allege that Defendants have failed to provide reasonable accommodations in the form of an operable wheelchair lift and ramp that would allow her an "equal opportunity to use and enjoy the Subject Property as other non-disabled residents."  *Id.*, ¶ 73.

Plaintiff's theory of liability fits neatly into these provisions of the DCHRA.  Subsection (d)(3) of D.C. Code § 2-1402.21 defines what constitutes "unlawful discrimination" under subsection (d)(2); and that definition includes a failure to make reasonable accommodations for a tenant's disability.  *See* D.C. Code § 2-1402.21(d)(3) (stating "*[f]or the purposes of this subsection*, 'unlawful discrimination' includes . . . [a] refusal to make reasonable accommodations . . .") (emphasis added); *see also Parham v. CIH Properties, Inc.*, 148 F. Supp. 3d 5, 12 n.4 (D.D.C. 2015) ("The DCHRA prohibits landlords from discriminating against persons with disabilities and *includes in its definition* of 'unlawful discrimination' a 'refusal to make reasonable accommodations' for disabled tenants.") (emphasis added).

To succeed on a failure to accommodate claim, a plaintiff must show "(1) the existence of a handicap [within the meaning of the statute]; (2) that defendants knew . . . of the handicap; (3) that the accommodation may be necessary to afford [her] an equal opportunity to use and enjoy the dwelling; and (4) that defendants refused to make the requested accommodation."  *United States v. District of Columbia*, 538 F. Supp. 2d 211, 217–18 (D.D.C. 2008) (internal quotations omitted); *see also Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) ("[The] underlying assumption of any reasonable accommodation claim is that plaintiff . . . has requested an accommodation which the defendant . . . has denied.").  Here, Gatling plainly meets the definition of "disabled" due to her use of a wheelchair.  *See* D.C. Code § 2-1401.02(5A) (defining "disability" as a physical impairment "that substantially limits one or more of the major

life activities of an individual").  Gatling also alleges that she made numerous requests of Defendants to fix the ramp and the wheelchair lift, such that Defendants had ample notice of her disability, yet Defendants refused to make the requested accommodations.  *See, e.g.*, Sec. Am. Compl., ¶ 42 (stating that Gatling "requested that the ramp be repaired and brought into architectural compliance with proper slope and handhold bars," and that "[her] requests have either been ignored or dismissed"); ¶ 34 ("Plaintiff . . . [has] repeatedly requested in 2020 that the wheelchair lift be repaired and/or replaced."); ¶ 36 ("Ms. Gatling's repeated requests have either been ignored or dismissed repeatedly.").

Lastly, Gatling sufficiently alleges that the requested accommodations are necessary for her to have an equal opportunity to enjoy and use the property.  *See, e.g.*, Sec. Am. Compl., ¶ 37 (stating that because of the inadequate wheelchair ramp, Gatling "fears to travel down the ramp out of fear of falling again"); ¶ 38 (asserting that the current conditions require Gatling to obtain the "assistance of one or two people" to navigate the building's entrance); ¶ 39 (stating that Gatling "has been virtually home-bound and unable to use and enjoy the benefits and privileges of living in the Mozart" due to the failure to provide an accessible means to enter and exit the building), ¶ 75 (alleging that it is not an "undue hardship for Defendants to provide a legally complaint wheelchair lift" and wheelchair ramp to allow Gatling to enter and exit the property). Gatling's allegations thus meet all the necessary elements of a failure to accommodate claim.[2]

---

[2]        Unlike D.C. Code § 2-1402.21(a)(4), which requires intentional discrimination, the case law is clear that intentional discrimination is not required for a reasonable accommodation claim.  *See Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 173 (D.D.C. 2014) (stating that failure-to-accommodate claims "do not require proof of intentional discrimination").  The established standard for establishing a failure to accommodate claim under Section 504 of the Rehabilitation Act is further proof that reasonable accommodation claims under the DCHRA do not require intentional discrimination.  "[Section 504] and DCHRA are generally interpreted to be coextensive with regard to the requirement to reasonably accommodate."  *Parham v. CIH Properties, Inc.*, No. 14-cv-1613, 2015 WL 5294683, at *4 (D.D.C. Sept. 8, 2015).  This Circuit has found that Section 504 "does not require proof of discriminatory intent because '[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference — of benign neglect.'"  *See Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1261 (D.C. Cir. 2008) (alteration in original) (quoting *Alexander v.*

The Court is not persuaded by Defendants' argument that Plaintiff's claim under subsections (d)(2)(A) and (d)(3)(B) is futile.  Defendants assert that Plaintiff's proposed claims are, at their core, still claims that Defendants violated design and construction guidelines of the DCHRA that are not applicable to the Mozart.  *See* Def. Opp. at 6–10; *see id.* at 9 (arguing that Plaintiff's "cannot merely cite to, or rely on, different subsections of the DCHRA to otherwise state Defendants are liable for allegedly failing to provide Plaintiff with a more accessible route").  But subsections (d)(2)(A) and (d)(3)(B) of D.C. Code § 2-1402.21 provide an independent basis to bring a claim of disability discrimination under the DCHRA, and Plaintiff has alleged facts that support such a claim.  The proposed amendment therefore is not futile, and the Court will grant Gatling's motion to add a claim under D.C. Code §§ 2-1402.21(d)(2)(A) and (d)(3)(B).[3]

        c.       D.C. Code § 2-1402.62

Gatling seeks to resurrect her claim under D.C. Code § 2-1402.62 for aiding and abetting discrimination, alleging that Defendants "aided and/or abetted discrimination against Plaintiff on the basis of her disability and/or in housing in violation of D.C. Code §§ 2-1402.21(a)(4), (d)(2)(A), and/or (d)(3)(B)."  *See* Sec. Am. Compl., ¶¶ 85–87.  Section 2-1402.62 of the DCHRA states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to

---

*Choate*, 469 U.S. 287, 295 (1985)).

[3]     Gatling also relies on standards published by the American National Standards Institute ("ANSI") to her allegation that Defendants violated D.C. Code § 2-1402.21(d)(3)(B).  D.C. Code § 2-1402.21(d)(4) states that "[c]ompliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for persons with disabilities suffices to satisfy the requirements of paragraph (3) of this subsection."  D.C. Code § 2-1402.21(d)(4).  Gatling submits pictures and measurements of the current wheelchair ramp showing that the slope and design are not in compliance with ANSI standards.  *See* Sec. Am. Compl., ¶¶ 21–28.  Defendants argue that D.C. Code § 2-1402.21(d)(4) only applies to the design and construction standards listed in subsection (d)(3)(C) and (d)(3)(D), but this is contrary to the plain language of subsection (d)(4), which states it applies to all of subsection (d)(3).  Thus, Plaintiff may rely on violations of the ANSI standards as evidence of Defendants' alleged violation of D.C. Code § 2-1402.21(d)(3)(B).

attempt to do so." D.C. Code § 2-1402.62. This Court previously dismissed Plaintiff's claim of aiding and abetting discrimination because it dismissed Plaintiff's other DCHRA claims, and a violation of D.C. Code § 2-1402.62 requires an underlying violation. *See* Mem. Op. at 15–16. While this Court will allow Plaintiff to amend her complaint to add new DCHRA claims, the facts alleged by Gatling do not support liability under a theory of aiding and abetting; rather, Gatling's Second Amended Complaint asserts that Defendants, who jointly own the Mozart, are principal actors. The aiding and abetting clause "is meant to prohibit an individual *from assisting another* person in discriminating," and thus, the actors who performed the discriminatory acts cannot also aid and abet the alleged discrimination. *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 156 (D.D.C. 2014) (emphasis added) (dismissing a claim of aiding and abetting because the defendant was the party accused of affirmatively discriminating against plaintiff, and a party cannot aid and abet itself). Here, Gatling alleges that Defendants have aided and/or abetted discrimination by "refusing and/or failing to provide legally compliant accessibility equipment" and by "refusing and/or failing to reasonably accommodate her disabilities." Sec. Am. Compl., ¶ 85. These are the same acts that Defendants allegedly committed in violation of D.C. §§ Code 2-1402.21(d)(2)(A) and (d)(3)(B). *See* Sec. Am. Compl., ¶¶ 71, 75–76. Defendants cannot aid and abet their own allegedly discriminatory acts. Therefore, the proposed violation of D.C. Code § 2-1402.62 is futile, and the Court will deny Plaintiff's request to add this claim.

      d.   <u>Implied Covenant of Good Faith and Fair Dealing</u>

Gatling seeks to add a claim that Defendants breached the implied covenant of good faith and fair dealing by failing to provide reasonable accommodations for her disability. *See* Sec. Am. Compl., ¶¶ 91–96 (stating that "Defendant JHLP has breached the implied covenant of good

faith and fair dealing in the Contract by evading the spirit of the Contract by . . . imposing significant restrictions on Plaintiff's ability to gain egress" to and from the property).   But the proposed amendment is substantially the same as a claim that this Court previously dismissed. *See* Mem. Op. at 18–20 (dismissing claim of breach of implied covenant of good faith and fair dealing in Amended Complaint); Am. Compl., ¶ 85 ("Defendant JHLP has breach the covenant of good faith and fair dealing in the Contract by . . . denying requested reasonable accommodations for her disabilities so that she may navigate through the Subject Property with her wheelchair without impediments.").   The Court therefore denies Plaintiff's request to add this claim because it is futile.   *See Robinson*, 211 F. Supp. 2d at 114 (holding that an amended complaint is futile if it "reasserts a claim on which the court previously ruled").

e.    <u>Implied Warranty of Habitability</u>

Gatling further seeks to add a claim that Defendant JHLP breached the implied warranty of habitability, alleging that by refusing or failing to provide accessible equipment and entrances to the Mozart, "Defendant JHLP has failed to exercise reasonable care to keep safe all common areas of the Subject Property, comply with D.C. Housing Regulations, and fulfill the implied warranty of habitability."   Sec. Am. Compl., ¶ 102.[4]

"[A] warranty of habitability, measured by the standards set out in the Housing Regulations for the District of Columbia, is implied by operation of law into leases of urban dwelling units covered by those Regulations[.]"   *Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1072–73 (D.C. Cir. 1970); *see also id.* at 1080 (stating that the warranty is non-waivable and read into all leases for residential housing.).   Under the implied warranty of habitability,

---

[4]        While Gatling argued that Defendants breached the implied warranty of habitability in her opposition to the Defendants' motion to dismiss her Amended Complaint, *see* ECF No. 18, she did not include that claim in her Amended Complaint, *see* Am. Compl.   The Court thus did not previously dismiss that claim.

"landlords are required to comply substantially with the Housing Regulations of the District of Columbia which provide . . . that every premises . . . shall be maintained and kept in repair so as to provide decent living accommodations for the occupants." *George Washington Univ. v. Weintraub*, 458 A.2d 43, 46 (D.C. 1983). A landlord's failure to comply with the housing regulations constitutes a breach of the implied warranty of habitability. *See Javins*, 428 F.2d at 1082. In addition, the D.C. Court of Appeals has stated that the failure "to provide wheelchair access to [an] apartment building would clearly be a breach of the implied warranty of habitability." *Killingham v. Wilshire Inv. Corp.*, 739 A.2d 804, 810 (D.C. 1999). While not relying on a provision of the D.C. Housing Code, *Killingham* relied on then D.C. Code § 6-1706, now codified at D.C. Code § 7-1006, which states that "[p]ersons with physical or mental disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in the District of Columbia." D.C. Code § 7-1006(a). This statute "may naturally be read . . . as imposing an obligation on rental housing providers to provide full access for disabled persons." *Killingham*, 739 A.2d at 810.

Here, Gatling's proposed Second Amended Complaint alleges that she has been denied "full and equal access" to the Mozart based on the Defendants failure to fix the wheelchair ramp and wheelchair lift. *See, e.g.*, Sec. Am. Compl., ¶ 39 ("Ms. Gatling has been virtually home-bound an unable to use and enjoy the benefits and privileges of living in the Mozart."); ¶ 69 (alleging that Defendants' refusal to fix the wheelchair ramp and lift affect "Ms. Gatling's ability to use and enjoy the Subject Property like other non-disabled residents"); *see also* Section II.b. Because Gatling has sufficiently alleged that Defendants have failed to provide "full and equal

access" for disabled persons in violation of D.C. Code § 7-1006, *see Killingham*, 739 A.2d at

810, her proposed claim of a breach of the implied warranty of habitability is not futile.[5]

    f.    <u>Covenant of Quiet Enjoyment</u>

Lastly, Gatling seeks to add a claim that Defendants breached the covenant of quiet

enjoyment.  Gatling alleges that as a result of their failures to address her complaints, Defendants

have "obstructed, interfered with and/or taken away from Ms. Gatling in a substantial degree the

beneficial use of her leasehold."  Sec. Am. Compl., ¶ 105.  Gatling asserts that she is "not free to

come and go from the Subject Property without the landlord's interference and assistance from

others."  *Id.*, ¶ 106 (emphasis omitted).

"Courts set a high bar for finding a breach of the covenant of quiet enjoyment — there is

no breach of the covenant 'unless there is an eviction from, or some actual disturbance in, the

possession by the landlord or by some third person under paramount title.'"  *Whole Foods Mkt.*

*Grp., Inc. v. Wical Ltd. P'Ship*, 288 F. Supp. 3d 176, 191 (D.D.C. 2018) (quoting *Hyde v.*

*Brandler*, 118 A.2d 398, 400 (D.C. 1955)); *see also Hyde*, 118 A.2d at 400 ("The covenant is not

broken unless there is an eviction from, or some actual disturbance in, the possession by the

landlord.").  "Absent departure from the premises, a tenant has great difficulty in claiming a

'constructive eviction' equivalent to the actual physical interference with his possessory rights."

*Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713, 716 (D.C. 2007).

---

[5]    Gatling alleges that Defendants also are in violation of 14 DCMR § 902.1.  *See* Sec. Am. Compl., ¶¶ 99–101.  This provision states that "it shall be the duty of the operator of each housing business to keep fire escapes, stairways, and other egress facilities in a good state of repair and free from obstruction."  14 DCMR § 902.1. Gatling interprets the term "egress facilities" to extend to the ramp and wheelchair lift, as those are necessary for wheelchair users to enter and exit the facility.  *See* Pl. Reply at 13.  Plaintiff also contends that because a wheelchair lift is essentially a stairway for disabled people, the failure to maintain it in working order constitutes a violation of this provision.  *Id.*  Defendants counter that this regulation applies only to stairways and fire escapes, which are not at issue here.  *See* Def. Opp. at 12; *see also id.* (noting that the regulation pertains to "Safety and Fire Prevention," rather than accessibility features).  The Court agrees with Defendants that the cited regulation does not address reasonable accommodations for persons with disabilities, and that Plaintiff does not sufficiently allege a violation of 14 DCMR § 902.1.

Gatling fails to allege facts that meet the "high bar" of actual interference required to prove a breach of the covenant of quiet enjoyment. *See Whole Foods Mkt. Grp.*, 288 F. Supp. 3d at 191. While Gatling alleges that she has been "virtually home bound," Sec Am. Compl., ¶ 39, she also states that she has the ability to enter and exit the Mozart "with the assistance of one or two people," *id.*, ¶ 38. These facts do not amount to a "constructive eviction" equivalent to an actual interference with Gatling's possessory rights. *See Sobelsohn*, 926 A.2d at 716. Importantly, Gatling is still in full possession of her apartment. *See Whole Foods Mkt. Grp.*, 288 F. Supp. 3d at 191. This proposed claim is therefore futile, and Plaintiff may not amend her complaint to add it.[6]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's Motion for Leave to File Second Amended Complaint. The Motion is granted to the extent that it seeks to add claims of violations of D.C. Code §§ 2-1402.21(d)(2)(A) and (d)(3)(B), and a breach of the implied warranty of habitability. The Motion is denied with respect to Plaintiff's requests to add claims of violations of D.C. Code § 2-1402.21(a)(4), D.C. Code § 2-1402.62, and breaches of the implied covenant of good faith and faith dealing and the implied covenant of quiet enjoyment. A separate Order will issue this day.

Date: January 26, 2022

_____
FLORENCE Y. PAN
United States District Judge

---

[6]     Gatling relies on a recent D.C. Court of Appeals case which stated that a "tenant's right to quiet enjoyment means that the tenant 'has possession of the property and is free to come and go from the property without the landlord's interference.'" *See Odumn v. United States*, 227 A.3d 1099, 1105 (D.C. 2020) (quoting 49 Am. Jur. 2d Landlord and Tenant § 469). It is worth noting, however, that *Odumn* was not a case about a breach of the covenant of quiet enjoyment. Rather, the court discussed the covenant to understand the meaning of an unlawful entry statute. *Odumn*, 227 A.3d at 1107. Further, no other courts in this jurisdiction have adopted such an expansive definition of the breach of the covenant of quiet enjoyment. The Court therefore declines to rely on one sentence, taken out of context, from an opinion that does not fully discuss or analyze the covenant of quiet enjoyment.